THORNAL, Justice.
Appellants Forman, who were plaintiffs below, seek reversal of a final decree dismissing their complaint in a suit to quiet title.
The determining point is whether the plaintiffs below were precluded from maintaining their suit by reason of the doctrines of res judicata, estoppel by judgment, or the rule of stare decisis.
On March 21, 1955, appellants Forman filed their complaint to quiet the title to a parcel of land located in Government Lot 1, Section 24, Township 50 South, Range 42 East, Broward County. For convenience only we will refer to the parcel as Government Lot 1. The Formans grounded their title on a conveyance from one DeBeltrand who had acquired the described parcel by virtue of a county tax deed issued December 1, 1947. The tax deed was predicated upon a county tax certificate for 1944 taxes together with the redemption of certificates covering taxes for the years 1943, 1945 and 1946.
All of the appellees claim rights under Florida Land Holding Corporation, now a dissolved Florida corporation. The ap-pellees claim title to Government Lot 2, Section 24, Township 50 South, Range 40 East.
This makes necessary a brief description of the relationship between the two parcels. According to the original government survey of 1870 it appears that Government Lot 1 was bounded on the East by the Atlantic Ocean. It was bounded on the West by a body of water known as New River Sound. Government Lot 2 was located immediately West of New River Sound. It is apparent, therefore, on the basis of the original government survey that Government Lot 2, claimed by the appellees, was separated from the waters of the Atlantic Ocean, first by New River Sound, and then by Government Lot 1.
On May 25, 1945 Florida Land Holding Corporation filed its complaint against J. W. Hamm, et al., in the Circuit Court of Broward County. By its complaint in that suit Florida Land Holding Corporation alleged itself to be the owner of the above mentioned 'Government Lot 2 and other lands. The owners of record of the above described Government Lot 1 were named parties-defendant. In the complaint in the Hamm suit it was alleged that Government Lot 1 had disappeared by a process of erosion, that Florida Land Holding Corporation had acquired the West one-half of New River Sound by process of accretion and that as a result of these two forces of nature, the Eastern boundary of Government Lot 2 had become the Atlantic Ocean.
In the Hamm suit the Chancellor agreed with the contentions of Florida Land Holding Corporation after a strenuous contest. He held that the actual physical status of the property was simply that Government Lot 1 and the East half of New River Sound had disappeared as the result of natural conditions and that the Atlantic Ocean had become the natural Eastern boundary of Government Lot 2. As a result of this condition he further held that the owner of Goverment Lot 2 was entitled to all riparian rights in the waters and submerged lands of the abutting ocean. The Tax Assessor of Broward County was a party-defendant to the Hamm suit. The final decree in the Hamm suit was entered March 21, 1947, and the Tax Assessor was enjoined from further assessing any county taxes against the above mentioned Government Lot 1. This decree of the Chancellor was appealed to this Court and was affirmed without opinion. Hamm v. Florida Land Holding Corporation, 160 Fla. 340, 34 So.2d 312.
*598 It becomes necessary now to relate the factual basis of appellant Forman’s claim as related to dates involved in the Hamm litigation. It will be recalled that the Hamm complaint was filed May 25, 1945. No lis pendens was placed on record. On June 1, 1945, Bailiwick, Inc. acquired from Broward County a tax certificate covering delinquent county taxes on the portion of Government Lot 1 claimed by the appellants for taxes for the year 1944. In September of 1947, after the entry of the final decree in the Hamm litigation in March, 1947, Forman’s predecessor in title acquired the June 1, 1945 tax certificate as well as tax certificates for delinquent taxes for the years 1943, 1945 and 1946. The certificate dated June 1, 1945 covered the delinquent taxes due in 1944.
Thereafter Forman’s predecessor in title applied for a tax deed on the disputed portion of Government Lot 1 pursuant to statutory notice. Neither Forman nor any of his predecessors were made parties to the Hamm litigation. It is obvious that they do not claim under any of the parties named in the Hamm suit. After acquiring the title under the December, 1947 tax deed, Forman instituted this litigation to quiet his title claiming that. Government Lot 1 was actually in existence, that it had been in existence all of the time, that it had never been eliminated by erosion and that he was entitled to have his title quieted. The Formans moved for a summary decree supporting’their motion with affidavits and depositions which if not contested could sustain the conclusion that Government Lot 1 actually was in existence and had never been eliminated.
The appellees moved to dismiss the complaint and at the hearing on motion for summary judgment as well as on their motion to dismiss they submitted to the Chancellor the entire record in the litigation involved in Florida Land Holding Corporation v. Hamm, et al.
By his order dismissing the complaint the Chancellor expressed the view that For- . man and his predecessors were bound by the adjudication in the Hamm litigation, the tax deed allegedly covering land therein, adjudged to be non-existent; that they could not now re-open the factual question as to the actual existence of Government Lot 1, and this being the case, their complaint should be dismissed. He thereupon dismissed the complaint with prejudice and entered a decree accordingly. It is the' reversal of this decree which is sought by this appeal.
Appellants contend that inasmuch as they were not parties to the Hamm litigation that they ground their claim on a completely independent source of title not related in-any fashion to the claims of any of the defendants in the Hamm suit and that they are therefore not bound by the factual adjudications of that decree.
The appellees here simply contend that we should apply the doctrine of stare decisis in order to affirm the final decree.
 At the outset we must hold that the doctrine of stare decisis has no applicability whatever to the situation before us;. This doctrine involves no element of estop-pel or res judicata. The rule of stare de-cisis is merely the embodiment of a legal-maxim to the effect that a principle or rule of law which has been established by the decision of a court of controlling jurisdiction will be followed in other cases-involving similar situations. Stare decisis relates only to the determination of questions of law. It has no relation whatever to the binding effect of determinations of fact. Freeman on Judgments, Vol. 2, 5th ed., Sec. 630, p. 1329. In actuality the rule of stare decisis is merely a rule followed by the courts in order to maintain stability in the-law and although its application is not obligatory in any particular case, it is considered appropriate in most instances in order to produce consistency in the application of legal principles unless for some-compelling reason it becomes appropriate-to recede therefrom. Obviously in the- *599 instant situation we need not concern ourselves with the application of stare decisis.
The line of cleavage between the appellants and the appellees is the contention of the appellants that their rights, if any, were not adjudicated in the Hamm litigation for the simple reason that the factual determinations of the Chancellor in the Hamm suit could not be binding upon them because they were neither parties nor in privity with parties to that litigation. We think there is merit to the contention of the appellants.
It is unnecessary for us to delve into the intricate distinctions between the doctrine of res judicata and estoppel by judgment. We have disposed of this problem on previous occasions. Gordon v. Gordon, Fla. 1952, 59 So.2d 40.
The nub of the situation here apparent simply is that the appellants lay claim to certain rights grounded on an alleged factual situation which they claim to exist. The appellees in reply contend that the factual situation has been previously adjudicated to the contrary in a suit to which neither these appellants nor those with whom they are in privity were parties. Actually when, on June 1, 1945, appellants’ predecessor acquired the first tax certificate which gave it a lien and an ultimate right to apply for a tax deed, it was not even charged with notice of the Hamm litigation for the simple reason that no lis pendens had been filed.
It is a rule well established that the doctrines of res judicata and estoppel by judgment apply only to parties to the litigation and those in privity with them. 30A Am.Jur., Judgments, Secs. 392-397, pp. 440-448. We, therefore, are compelled to conclude that it was error for the Chancellor in this instance to hold the appellants bound by the factual conclusions reached in the prior litigation to which they were neither parties nor in privity with parties.
We point out in passing that we are not here concerned with any so-called collateral attack on the judgment of a court of competent jurisdiction. The point here involved merely is that neither these appellants nor their predecessors in title have ever had their day in court on the factual issues allegedly settled in the prior Hamm case. Whether or not they can succeed in establishing their factual position is not a matter of present concern to this Court. We merely hold that they are entitled to an opportunity to try to establish it in accordance with orderly processes of the law.
The decree is therefore reversed and the cause is remanded for further proceedings consistent herewith.
TERRELL, C. J., and HOBSON, ROBERTS and O’CONNELL, JJ., concur.